**Lois BEDFORD, Individually and on Behalf of the Estate of Edwin Bedford, Deceased, Appellant,**

v.

**Rita Elaine MOORE, Tim Aldrich d/b/a T–C Trucking Company, and Scotty Hamrick d/b/a Western Contractors, Appellees.**

No. 2–03–377–CV.

Court of Appeals of Texas, Fort Worth.

May 26, 2005.

---

Gray Law L.L.P. and Jay K. Gray, Bedford, for Appellant.

Sedwick, Detert, Moran & Arnold, L.L.P., E. Paul Cauley Jr. and S. Vance Wittie, Dallas, for Rita Elaine Moore, Scotty Hamrick, and Western Contractors.

Burt Barr & Associates, L.L.P., and John House, Dallas, for Tim Aldrich.

PANEL A: CAYCE, C.J.; LIVINGSTON and McCOY, JJ.

## OPINION

BOB McCOY Justice.

### I. Introduction

This is an appeal from a judgment in a car-truck collision case following a jury verdict in favor of Rita Elaine Moore ("Moore"), Tim Aldrich d/b/a T–C Trucking Company ("Aldrich" and "T–C"), and Scotty Hamrick d/b/a Western Contractors ("Hamrick" and "Western"), wherein in two issues Lois Bedford, individually and on behalf of the estate of Edwin Bedford ("Bedford") asserts that the trial court committed error in the charge of the court by failing to submit a negligence question to the jury concerning Western and Aldrich and by excluding evidence that Moore, the driver of the Western vehicle, tested positive for methamphetamines in her post-accident drug screen. We will affirm.

### II. Factual Background

This is the case of the absent entrustment issue. Shortly after noon on September 9, 1999, Edwin Bedford ("Mr. Bedford") was involved in a motor vehicle accident with Moore. Mr. Bedford had pulled into a convenience store at the intersection of FM 1187 and Stephenson–Levy Road in Tarrant County, Texas. Upon emerging from the store parking lot, he crossed, or was crossing, the eastbound lane of FM 1187 to head westward when he was struck by an eastbound Volvo gravel truck driven by Moore for Western. Although she applied her brakes and attempted to avoid the collision, Moore was unable to avoid striking the vehicle. The collision caused Mr. Bedford's vehicle to be pushed off the road and up an embankment before the Volvo gravel truck came to rest on top of Mr. Bedford's vehicle. Mr. Bedford died as a result of the accident. Following the accident, Moore tested positive in a drug screen for methamphetamines.

The truck Moore was driving was owned by Aldrich, an employee of Western. It was leased to Western, which was owned by Hamrick, and was operated under Western's United States Department of Transportation ("DOT") permit. Prior to this incident, Moore had been involved in two other motor vehicle accidents and had received ten or more speeding citations in her eight years as a commercial driver. Hamrick had not taken any steps to check Moore's driving record before she was employed. The evening before the accident, Moore had been up all night waiting in an emergency room at a local hospital as a result of a head injury. When she arrived for work on the day of the accident, she appeared with a bandaged head and had received nine stitches in the emergency room but was allowed to drive the truck that was involved in the accident.

After the accident, this lawsuit ensued between Bedford and those allegedly responsible for the accident, resulting in a take-nothing judgment following a jury trial. Bedford appeals that judgment.

### III. Charge of the Court

Bedford phrases her first issue as "Whether the trial court erred in not submitting a negligence determination to the jury of Western Contractors and Aldrich?"

### A. Standard of Review

The trial court's submission of instructions and jury questions is reviewed under an abuse of discretion standard. *Toles v. Toles*, 45 S.W.3d 252, 263 (Tex. App.-Dallas 2001, pet. denied). The trial court has broad discretion in submitting jury questions so long as the questions submitted fairly place the disputed issue before the jury. This broad discretion is subject only to the limitation that the controlling issues of fact must be submitted to the jury. *Rosell v. Cent. W. Motor Stages,*

*Inc.,* 89 S.W.3d 643, 653 (Tex.App.-Dallas 2002, pet. denied).

In order to have a question submitted to the jury, there must be a proper legal theory forming a basis of recovery, and there must be sufficient evidence adduced to warrant its submission. If the reviewing/appellate court determines that error occurred, it must determine from the pleadings of the parties, the evidence presented at the trial, and the charge in its entirety whether such errors are reversible. *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986). Charge error is harmful only if it probably caused an improper judgment. TEX.R.APP. P. 44.1(a)(1); *Rosell,* 89 S.W.3d at 653.

### B. The Negligence Question

In its charge, the trial court posed to the jury the following liability questions (instructions omitted):

Question 1:

Did the negligence, if any, of those named below proximately cause the occurrence in question?

Answer Yes or No for each of the following:

Rita Elaine Moore _____
Edwin Bedford _____

Question 2:

What percentage of the negligence that caused the occurrence do you find to be attributable to each of those listed below and found by you, in your answer to Question 1, to have been negligent?

Rita Elaine Moore _____
Edwin Bedford _____
Total 100%

No question was presented to the jury concerning the negligence of Western or Aldrich compared to the negligence of Moore and Bedford. The jury answered question number one affirmatively for both Moore and Bedford. In response to ques-

tion number two, the jury allotted forty percent of the negligence to Moore and sixty percent to Bedford, thereby precluding any recovery on Bedford's part due to the fifty-percent bar rule. TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 (Vernon 1997).[1] The court subsequently signed a take-nothing judgment on September 24, 2003. This appeal followed.

### C. Negligent Hiring and Entrustment

In the pleadings on file, Bedford asserted various direct negligence causes of action against Aldrich and Western, generally related to negligent hiring, training, retaining, supervising, and entrusting Moore with the vehicle on the date in question, along with numerous alleged violations of the Federal Motor Carrier Safety Regulations.[2] On appeal, Bedford points the court to evidence presented at the trial of negligent hiring and entrustment by Aldrich and Western. This evidence is not contested.

It is appellees' position that it was unnecessary to submit a comparative negligence issue as to any party other than Moore and Bedford because the liability of any other defending party (the "other parties") would be derivative of Moore's liability. In other words, the "other parties" actions, standing alone, could not have caused this accident without the actions of Moore at the time of the accident. That is, they could be exposed to liability only if Moore's negligence proximately caused the accident. Appellees cite *Rosell*, 89 S.W.3d at 643, *Loom Craft Carpet Mills, Inc. v. Gorrell*, 823 S.W.2d 431 (Tex.App.-Texarkana 1992, no writ), and *Rodgers v.*

*McFarland*, 402 S.W.2d 208 (Tex.Civ.App.-El Paso 1966, writ ref'd n.r.e.), to support their position that the "other parties'" submission was unnecessary. In *Loom Craft*, the court held as follows:

> Negligent entrustment liability is derivative in nature. While entrusting is a separate act of negligence, and in that sense not imputed, it is still derivative in that one may be extremely negligent in entrusting and yet have no liability until the driver causes an injury. If the owner is negligent, his liability for the acts of the driver is established, and the degree of negligence of the owner would be of no consequence. When the driver's wrong is established, then by negligent entrustment, liability for such wrong is passed on to the owner. *We believe the better rule is to apportion fault only among those directly involved in the accident, and to hold the entrustor liable for the percentage of fault apportioned to the driver.*

823 S.W.2d at 432 (emphasis supplied) (citations omitted). In *Rodgers* (a case involving the old "guest" statute, Article 6701b of the Texas Civil Statutes[3]), the court observed that

> [t]he doctrine of negligent entrustment is that the owner of a vehicle who knowingly turns it over to an incompetent driver is liable for wrong committed by such driver. It differs from master-servant or agency relationships, for it is founded in tort—the negligence of the owner in turning the incompetent loose on the public. If, in fact, the owner is negligent, his liability for the acts of the

---

**1.** The liability theories against Aldrich and Hamrick were submitted in separate subsequent questions. These questions were not reached because of the jury's answer to Question No. 2 and the conditioning instruction preceding them.

**2.** 49 C.F.R. §§ 350.101–399.211 (2004).

**3.** Act of May 26, 1931, 42nd Leg., R.S., ch. 225, 1931 Tex. Gen. Laws 379, *repealed by* Act of May 17, 1985, 69th Leg., R.S., ch. 959, 1985 Tex. Gen. Laws 3242, 3322.

driver is established, and the degree of negligence of the owner would be of no consequence.... Obviously, an owner who is negligent in entrusting his vehicle is not liable for such negligence until some wrong is committed by the one to whom it is entrusted.... The driver's wrong, in the form of legal liability to the plaintiff, first must first be established, then by negligent entrustment liability for such wrong is passed on to the owner. The proximate cause of the accident or the occurrence is the negligence of the driver and not that of the owner.

402 S.W.2d at 210. The *Rodgers* opinion further cites *McIntire v. Sellers*, 311 S.W.2d 886 (Tex.Civ.App.-Austin 1958, writ ref'd n.r.e.), for the proposition that *"we do not believe it was necessary to submit an issue of proximate cause insofar as concerned the owner's negligence in entrusting the automobile to an unlicensed driver."* *Id.* at 892–93 (emphasis supplied). We would observe that the *Rodgers* case was written before the adoption of the Proportionate Responsibility Act, as it appears today in the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM.CODE ANN. § 33.001; *see also Rosell*, 89 S.W.3d at 656 ("[B]ecause [the employer] would be liable for its employees' negligence [under negligent entrustment], there was no necessity for including [the employer] in the ordinary negligence liability question.")

## D. Respondeat Superior

■ Bedford also assigned vicarious liability to Aldrich and Western as truck owner and employer of Moore under the theory of respondeat superior. As to vicarious liability, such as the theory of respondeat superior for an employee/employer, there need not be any allegation of negligence on the employer's part because an employer would be responsible for the employees' actions even if the employer were free from fault. *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex.1998). Therefore, there is no need to submit the employer's or owner's separate negligence under that theory. *Rosell*, 89 S.W.3d at 653.

## E. Which Theory is Most Applicable?

It is appellees' position that negligent hiring and entrustment are akin to the respondeat superior doctrine because both are derivative in nature. That is, they are dependent on a finding of negligence against Moore before any liability can be attributed to them. Further, appellees argue that the previously recited case law regarding negligent entrustment does not support submitting the employer or owner in the negligence liability/percentage questions, per *Loom Craft, Rodgers, McIntire,* and *Rosell.*

Bedford responds to these arguments by asserting that chapter 33 of the Texas Civil Practice and Remedies Code specifically provides that a jury shall determine the negligence of "each defendant." TEX. CIV. PRAC. & REM.CODE ANN. § 33.003(2). Section 33.003, entitled "Determination of Percentage of Responsibility" provides that

[t]he trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons:

(1) ...

(2) each defendant....

*Id.* Section 33.011, the definitions section, defines "defendant" as "any person from whom, at the time of the submission of the case to the trier of fact, a claimant seeks recovery of damages." TEX. CIV. PRAC. & REM.CODE ANN. § 33.011 (Vernon Supp. 2004–05). Bedford therefore asserts that because damages were sought at the time of trial from the "other parties," e.g., Aldrich and Western, it was error not to

include them in Question 1 and Question 2 of the charge of the court. We do not agree with the literal interpretation urged by Bedford. As the Dallas Court of Appeals has observed,

> [W]e observe that, while the statute [section 33.003] on its face requires all defendants to be included in the apportionment question, it would not be proper for an employer to be included along with the driver if its only responsibility was that of respondeat superior.

*Rosell*, 89 S.W.3d at 656–57.

This is obvious because an employer may have committed no negligent acts to submit to the jury and still be held accountable under respondeat superior. Also, Professors Underwood and Morrison have postulated that the legislature, in enacting the original and present versions of section 33.003, did not consider derivative or vicarious liability cases. William D. Underwood & Michael D. Morrison, *Apportioning Responsibility in Cases Involving Claims of Vicarious Derivative, or Statutory Liability for Harm Directly Caused by the Conduct of Another*, 55 Baylor L.Rev. 617, 647–48 (2003). They note that nothing in the legislative history suggests that the act intended to overturn the long-established rule that the responsibility of persons who are derivatively liable should not be submitted:

> Before construing the revised provisions in Chapter 33 to overturn established law—law that is supported by compelling policy justifications—it would not be unreasonable to insist on more direct indication that this is what the legislature intended to accomplish.

*Id.* at 648.

▮▮▮ Bedford further responds by pointing to the recent case, *F.F.P. Operating Partners, L.P. v. Duenez*, —— S.W.3d ——, 2004 WL 1966008, 47 Tex. Sup.Ct. J. 1068, 2004 WL 1966008 (Tex. Sept. 3, 2004), as *requiring* the submission of the "other parties'" negligence to the jury. We first note that this opinion is a five-four decision with Justice O'Neill writing for the majority and Justice Owen writing for the dissent, with a motion for rehearing pending at this time. Before examining this case, we must first decide specifically, what issue is before this court? Succinctly put, it is, should negligent hiring and entrustment by an employer be submitted comparatively to the jury along with the employee's negligence? There appears to be three types of cases under consideration. First is a purely vicarious liability situation, such as an employer/employee relationship involving respondeat superior wherein the employer is liable for the actions of the employee regardless of any allegation of fault on the part of the employer. Under this situation, the employer's negligence is not submitted because the employer and employee are considered to be one and the same. *Duenez*, —— S.W.3d at ——, 2004 WL 1966008, at *4. Second, at the other end of the spectrum are concurrent tortfeasors whose independent, distinct acts both proximately cause damage to the plaintiff, such as two automobiles running a red light and colliding with a third vehicle. Obviously in such a situation, both drivers who ran the red light would be submitted to the jury in the liability and percentage of negligence questions. Third, betwixt these situations are the negligent hiring and entrustment situations in which there are distinct acts of negligence, like the concurrent tortfeasor situation, and yet the distinct negligent act of hiring or entrusting, standing alone, is wholly dependent for causation upon the actions of the person who directly caused the accident, as in the respondeat superior situation. The question presented to us is whether this intermediate occurrence should be "lumped" with the respondeat

superior situation in which the employer's negligence is not submitted to the jury, or with the independent tortfeasor situation in which the employer's negligence is submitted to the jury.

The *Duenez* case is a Dram Shop Act case. The Duenezes sued F.F.P. Operating Partners, L.P., for providing alcohol to Ruiz, whose truck collided with the Duenezes' car, causing significant injuries to the family. Our supreme court observed,

> Causation under the Dram Shop Act is tied to the patron's intoxication rather than the provider's conduct. Because the Act imposes liability on providers for the actions of their customers regardless of whether the provider's conduct actually caused the injuries suffered, the court of appeals in this case concluded that the provider's liability is purely vicarious. Under the court's analysis, the provider and the intoxicated patron are one and the same, like the employer and the employee in a case founded upon the doctrine of respondeat superior. It is true that, if a provider's liability under the Dram Shop Act were purely vicarious, as the court of appeals held, there would be nothing for the jury to apportion between F.F.P. and the Duenezes in this case. But the Act has a direct liability component that the court of appeals wholly ignored. Unlike true vicarious liability, in which one party's actionable conduct is imputed to another, a dram shop's liability stems in part from its own wrongful conduct. In order to impose liability under the Act, the factfinder must conclude that the provider made alcohol available to an obviously intoxicated patron whose intoxication caused the plaintiff harm. . . . Accordingly, the dram shop liability is based on its own wrongful or dangerous conduct, even though the statutorily required causal link focuses on the patron's intoxication. . . .

*Id.* —— S.W.3d at ——, at *4.

The court goes on to conclude,

> [W]hen the factfinder determines that a provider has violated the Dram Shop Act and its patron's intoxication has caused a third party harm, *responsibility must be apportioned between the dram shop and the intoxicated patron, as well as the injured third party if there is evidence of comparative negligence.* The resulting judgment should aggregate the dram shop's and driver's liability so that the plaintiff fully recovers from the provider without assuming the risks of the driver's insolvency. The dram shop may then recover from the driver based upon the percentages of responsibilities that the jury assessed between them.

*Id.* —— S.W.3d at ——, at *5 (emphasis supplied).

The reasoning of the majority of the supreme court parallels the negligent hiring/entrustment theory of recovery. Under both theories, neither are pure vicarious liability situations because liability stems from distinct wrongful conduct. In order to impose liability under both situations, the fact finder must conclude that a preceding independent action occurred that caused the plaintiff harm even though the required causal link focuses on the act of the driver. Further, like the Dram Shop Act, if the hiring or entrusting employer is negligent, his liability for the acts of the driver is established, but by submitting both the driver's and the hiring or entrusting employer's negligence to the jury, allowance is made for recovery by the hiring or entrusting employer from the driver, based on the percentages of responsibility assessed by the jury.

Therefore, we hold that the proper submission in a simple negligent entrustment

or hiring claim, based upon sufficient evidence to warrant the submission, is to include the alleged negligent hiring or entrusting employer in an initial liability question and in the comparative negligence questions.

### F. Sufficient Evidence

In order to have a question submitted to the jury, sufficient evidence must be raised by its proponent, that is, the evidence must raise a material fact issue. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex.2000). Bedford asserts that she "pled and proved numerous acts of direct negligence of both Aldrich and Western Contractors for liability." We agree that there is sufficient evidence adduced to warrant submission to the jury for decision on the issue of negligent hiring and entrustment as to Western and negligent entrustment as to Aldrich. This evidence includes the following: Western Contractors did not perform a driving history check on Moore nor did Western Contractors even have a policy or procedure in place for ever performing driving history checks on its drivers; Hamrick agreed that a reasonable trucking company exercising reasonable care would have verified a prospective commercial driver's driving history; Hamrick admitted at trial that a reasonable trucking company seeing items listed on Moore's driving record would not have employed Moore as an operator of a commercial vehicle; Moore was not required to fill out an employment application as required by Federal Motor Carrier Safety Regulations ("FMCSR") section 391.21; Moore was not required to perform a pre-employment drug screen as required by FMCSR section 382.301; there was not a policy or procedure for requiring random drug testing as required by FMCSR section 382.305; Moore was not required to submit to a drug screen following her first accident while driving a company vehicle as required by FMCSR section 382.303; neither Aldrich nor Western required Moore to provide them with information from or about her prior employers as required by FMCSR section 391.21 and admitted to as the standard of care for a reasonable trucking company; and there was not a driver qualification file maintained on Moore as required by FMCSR section 391.51, which would have contained Moore's prior driving history, Moore's prior employment history, Moore's employment application, and a list of Moore's violations of motor vehicle laws and ordinances.

Further, when Moore showed up the morning of September 9, 1999, the day of the collision with Mr. Bedford, she had an obvious bandage on her head where she had just received nine stitches at an emergency room. Moore informed Aldrich that she had just come from the emergency room where she had been since midnight. Before Moore got behind the wheel of the gravel truck owned by Aldrich and began operating the truck under Western's DOT permit, it was apparent that she had suffered a head injury and had been without sleep since at least midnight.

### G. Application

For two reasons, however, we hold that it was harmless error in this case to fail to submit negligent hiring and entrustment in the liability and percentage of liability questions. First, as pointed out in *Rosell,* the elements of negligent hiring are different from the elements of negligent entrustment. For negligent hiring, a plaintiff must prove that (1) the employer owed a legal duty to protect the employee's actions and (2) the third party's sustained damages were proximately caused by the employer's breach of that duty. *Rosell,* 89 S.W.3d at 655. In order to prove a cause of action for negligent entrustment, the proponent must show that

there was (1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known to be unlicensed, incompetent, or reckless; and (4) the driver's negligence on the occasion in question; (5) proximately caused the accident. *Id.* This may require the submission of separate negligence issues on different negligence theories when submitted with the negligence of other parties. *Id.* at 655–56.

 Further, the jury determined that Bedford was sixty percent responsible for the accident and Moore was forty percent responsible. The Texas apportionment scheme requires the trier of fact to determine the percentage of *causation* attributable to each claimant, defendant, and responsible third party.[4] The jury question and accompanying instructions were consistent with this law. The court must presume that the jury followed the court's instructions and apportioned the responsibility according to its view of how much the parties contributed to causing the accident. *See Tesfa v. Stewart*, 135 S.W.3d 272, 278 (Tex.App.-Fort Worth 2004, no pet.). There were only two people involved in the accident. Therefore, the submission of the acts of "other parties" whose actions preceded the actions of Moore at the time of the accident could only have contributed to her actions at the accident scene, that is, to her forty percent negligence. In other words, because there were only two parties involved in the incident, the jury has decided how those actions at the time of the accident should be apportioned as far as responsibility is concerned. What led up to those actions at

the time of the accident does not change those actions at the accident scene but can only be subparts of those respective responsibilities. Aldrich and Hamrick did not cause Bedford to cross the highway or Moore to strike that truck. Therefore, while we believe that the proper submission in a simple negligent entrustment or negligent hiring case is to submit the negligent entrustor or negligent hiring employer in the general liability and comparative questions, under the facts of this case, we conclude that it was harmless error to omit them from those questions.

## IV. Excluded Evidence

 In her second issue, Bedford alleges that the trial court "erred in excluding all evidence regarding the positive results of Rita Moore's post-MVA drug screen." Following the accident, a DOT-required drug screen showed that Moore had methamphetamines in her system. The trial court excluded all evidence concerning the drug screen and its results. Bedford attempted to offer the testimony of Dr. Daniel Drew, a physician retained by DOT who had analyzed the drug screen conducted on Moore. Upon objection, Dr. Drew was not allowed to testify about the correctness of the examination and the effects methamphetamine can have on an individual. Dr. Drew also testified outside the presence of the jury that the testing showed that sometime between September 5 and September 9 of 1999, Moore had either eaten or injected or in some other way received methamphetamine into her system which was "at least a minute amount. There was enough to make cer-

---

4. Tex. Civ. Prac. & Rem.Code Ann. § 33.003. This comparative causation system is distinct from one that compares the relative fault of the parties. *See generally,* Montford, J. & Barber, W., *1987 Texas Tort Reform: The Quest for a Fairer and More Predictable Texas Civil Justice*

*System* 25 Hou. L.Rev. 245, 272–75 (1988). For the distinction between comparative fault and comparative causation system, see *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 427–28 (Tex.1984).

tain that this could not have been from second hand smoke ... or something like that." However, Dr. Drew also testified that a positive finding for methamphetamines did not prove impairment and that he could not tell the jury that Moore was impaired at the time of the accident. Bedford also attempted to offer the lay testimony of witness Ronald G. Curry that Moore appeared to be under the influence of drugs at the time of the accident and that she appeared to be "hyper." On objection, these observations were not allowed to be presented to the jury.

## A. Applicable Law and Standard of Review

 A trial court's evidentiary ruling is reviewed under an abuse of discretion standard. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A court abuses its discretion only when it rules without regard to any guiding rules or principles. *Id.* Exclusion of evidence is harmful only if the evidence is controlling on a material issue and is not cumulative. *Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex.1994); *Franco v. Franco*, 81 S.W.3d 319, 321 (Tex.App.-El Paso 2002, no pet.). A successful challenge to an evidentiary ruling generally requires showing that the judgment turned on the particular evidence in dispute. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex.2000). We examine the entire record in making this determination of harm. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex.2001).

 Generally, drug usage, without further evidence of negligence, is inadmissible. *See Trans–State Pavers, Inc. v. Haynes*, 808 S.W.2d 727, 729 (Tex.App.-Beaumont 1991, writ denied); *Dorman v. Langlinais*, 592 S.W.2d 650, 652 (Tex.Civ. App.-Beaumont 1979, no writ). Bedford cites *Nichols v. Howard Trucking Co.*, 839 S.W.2d 155 (Tex.App.-Beaumont 1992, no writ), for the proposition that once evidence of improper conduct or negligence is presented, a trial court's exclusion of testimony concerning a party's use of intoxicants is reversible error. In the *Nichols* case, the deceased driver was found to have an alcohol concentration in his blood of .0516, and a urine analysis test revealed that he tested positive for the presence of cannabinoids, that is, marijuana. There was expert testimony concerning the adverse effects that alcohol had on the individual's ability to operate an automobile and the effect that marijuana had on an individual. The court noted that "evidence of the use of intoxicants is inadmissible as immaterial unless there is further evidence of negligence and improper conduct of the part of the user." *Id.* at 158. That is, evidence of drug usage must provide some explanation for the negligence and improper conduct. However, this was not present under our facts because Dr. Drew could not tie the presence of methamphetamines in Moore's body to impairment at the time of the accident, and therefore could not connect the presence of the drug to causation.

Further, because Dr. Drew could not identify any particular level of the drug in Moore's system at time of the accident or state that the amount of the drug in her system was at a level at which any impairment could be adduced, there was no evidence that the presence of the drug was a causative factor in the accident. We hold that the trial court did not abuse its discretion by excluding the testimony of Dr. Drew or Mr. Curry.

## V. Conclusion

Having overruled Bedford's issues, we affirm the judgment of the trial court.

CAYCE, C.J., filed a concurring opinion.

JOHN CAYCE, Chief Justice, concurring.

I join the majority's opinion, but I concur only in the result reached by the majority on the issue of whether the trial court erred in failing to submit the negligence of Aldrich and Hamrick to the jury.

The jury found that Bedford was sixty percent responsible for the accident. This unchallenged finding is binding on appellants and bars their recovery as a matter of law. TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 (Vernon 1997). Therefore, assuming without deciding that the trial court erred in failing to submit the negligence of Aldrich and Hamrick, I believe the error, if any, was harmless.[1] *See Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 750 (Tex.1980) (holding error in submission of jury question is harmless when other jury findings support judgment); *Tex. & Pac. Ry. Co. v. Snider,* 159 Tex. 380, 321 S.W.2d 280, 283 (1959) (holding error in submitting definition of contributory negligence harmless where judgment rested on different jury findings); *San Antonio Press, Inc. v. Custom Bilt Machinery,* 852 S.W.2d 64, 65 (Tex.App.-San Antonio 1993, no writ) (stating that when unchallenged no-damage finding supports judgment, error in liability finding is harmless).

For these reasons, I concur only in the result reached by the majority in overruling issue one. I join the remainder of the opinion.

---

1. We may not speculate, as appellant urges us to do, whether the jury might have assigned less than fifty percent responsibility to Bedford if it had been allowed to consider Aldrich and Hamrick's negligence. Instead, we must presume the jury followed the trial court's instructions and apportioned sixty percent of the responsibility for the accident to Bedford based on the evidence. *See Tesfa v. Stewart,* 135 S.W.3d 272, 278 (Tex.App.-Fort Worth 2004, pet. denied).