NO. 12-08-00084-CV

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

THOMAS LEE FITZPATRICK AND            §                   APPEAL
FROM THE 

WIFE, JENNIFER FITZPATRICK,

APPELLANTS

V.                                                                     
§                    COUNTY COURT AT LAW #3 

 

DAVID G. WATSON, M.D.,

APPELLEE                                                   
§                     SMITH COUNTY, TEXAS







MEMORANDUM
OPINION

            Thomas Lee Fitzpatrick
and Jennifer Fitzpatrick appeal the trial court’s final judgment in a medical
malpractice lawsuit they brought against David G. Watson, a former physician.  In
two issues, the Fitzpatricks argue that the trial court reversibly erred by excluding
evidence that Watson had a history of cocaine use and was suffering from
cocaine induced impairment at the time he treated Thomas Fitzpatrick’s injured
arm.  We affirm.

 

Background

            On July 6, 2002, Thomas
Fitzpatrick accidentally broke through a glass window with his arm, resulting
in a severe cut to the arm.  His wife, Jennifer Fitzpatrick, immediately drove
him to the emergency department of East Texas Medical Center (ETMC) in Tyler,
Texas.  At ETMC, Watson examined and treated Fitzpatrick.  At the time, Watson
was a licensed, board certified emergency medicine physician. 

            Watson examined
Fitzpatrick, partially cleaned his wound, and sutured the wound closed.  Watson
subsequently ordered that Fitzpatrick be discharged with instructions to follow
up with an orthopedic surgeon.  He also prescribed pain medication for
Fitzpatrick to take until he was able to be treated further by the surgeon.

            The following day,
after experiencing intense pain in his arm, Fitzpatrick was taken by his wife
to Parkland Hospital in Dallas, Texas.  An x-ray of Fitzpatrick’s arm was made,
which showed a foreign object in the arm.  Parkland physicians determined that
Fitzpatrick’s ulnar nerve had been cut.  Two days later, surgeons removed the
foreign object, a glass shard, from Fitzpatrick’s arm and attempted to repair
the damage to his ulnar nerve.  This repair attempt was only partially
successful; Fitzpatrick now suffers from a permanent loss of use in his hand.

            The Fitzpatricks sued
Watson.  They alleged that Thomas Fitzpatrick’s ulnar nerve had not been cut at
the time Watson examined him in the emergency department.  Instead, they
claimed that the glass shard left in Fitzpatrick’s wound had cut the nerve
sometime after his discharge from ETMC.  They claimed Watson was negligent by
failing to order an x-ray to check for any glass in the arm, and for suturing
the wound closed despite suspecting glass might be present in the arm.  The
case was tried to a jury, who found that Watson was not negligent in his
treatment of Fitzpatrick.  The trial court subsequently signed a take nothing
judgment.  This appeal followed.

 

Expert Extrapolation of Impairment

            In their first issue,
the Fitzpatricks complain that the trial court improperly excluded the expert
testimony of Dr. George Glass.[1]
Specifically, they complain that the trial court improperly excluded Dr.
Glass’s opinion that based upon Watson’s admissions of regular cocaine use, it
was possible to extrapolate that Watson was impaired at the time he treated
Thomas Fitzpatrick.

Standard of Review

            We review a trial
court’s exclusion of expert testimony under an abuse of discretion standard of
review.  See Neal v. Dow Agrosciences LLC, 74 S.W.3d 468,
471 (Tex. App.–Dallas 2002, no pet.); see also Gammill v. Jack Williams
Chevrolet, Inc., 972 S.W.2d 713, 718-19 (Tex. 1998).  A trial court
abuses its discretion when its decision is arbitrary, unreasonable, or without
reference to any guiding rules or legal principles.  K-Mart Corp. v.
Honeycutt, 24 S.W.3d 357, 360 (Tex. 2000).  “The mere fact that a
trial judge may decide a matter within his discretionary authority in a
different manner than an appellate judge in a similar circumstance does not
demonstrate that an abuse of discretion has occurred.”  Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985).  However,
a trial court has no discretion in determining what the law is or applying the
law to the facts.  Spitzer v. Berry, 247 S.W.3d 747, 750 (Tex. App.–Tyler
2008, pet. denied) (citing In re Kuntz, 124 S.W.3d 179, 181 (Tex.
2003) (orig. proceeding)).  In conducting an abuse of discretion review, we
examine the entire record. Mercedes-Benz Credit Corp. v. Rhyne,
925 S.W.2d 664, 666 (Tex. 1996).  When the trial court does not specify the
ground on which it excluded the testimony, we will affirm the trial court’s
ruling if any ground is meritorious.  Honeycutt, 24 S.W.3d at
360.  

            Whether an expert’s
testimony is reliable is a preliminary question for the trial court. Gammill,
972 S.W.2d at 720.  In assessing the reliability of expert testimony, a trial
court is not to determine whether an expert’s conclusions are correct, but only
whether the analysis used to reach those conclusions is reliable.  Id.
At 726.  An expert’s testimony can be unreliable if the expert draws
conclusions based on a flawed methodology.  Merrell Dow Pharms., Inc. v.
Havner, 953 S.W.2d 706, 714 (Tex. 1997).  There also may be simply too
great an “analytical gap” between the data and the opinion proffered for the
opinion to be reliable.  Gammill, 972 S.W.2d at 726.  A trial
court is not required to admit opinion evidence that is connected to existing
data only by the ipse dixit of the expert.[2]
 Id.

Discussion

            Dr. Glass is a board
certified psychiatrist specializing in the treatment of drug addicted persons. 
Before trial, Watson filed a motion to exclude Dr. Glass’s expert testimony as
to his extrapolation opinion that Watson was experiencing cocaine induced
impairment at the time he treated Thomas Fitzpatrick.  Watson alleged that Dr.
Glass’s opinion suffered from an impermissible analytical gap, rendering it
unreliable.  The trial court excluded the testimony.

            Dr. Glass’s opinion was
based upon an extrapolation from an admission by Watson that he had been
“abusing cocaine regularly” for “a year to a year and a half.”  He also relied
upon Watson’s admission that for the “[l]ast 12 months,” the “frequency per
month” was “eight times per month, two times per week.”  Dr. Glass held the
opinion that Watson “[c]ould have been high, he could have been in withdrawal,
he could have been right in the middle, but clearly, during the whole time, he
was using cocaine.”  According to Dr. Glass, if Watson “had been using cocaine
in the previous week or two, his occupational function was impaired.”  Dr.
Glass explained that Watson’s admitted cocaine habit “would affect his behavior
and performance” because “he would be either on his way up or on his way down”
at the time he treated Fitzpatrick.  Dr. Glass reached his opinion as to
Watson’s impairment despite admitting that “we don’t have a drug screen, we
don’t have any type of . . . urinalysis, we have nothing.”  Further, Dr. Glass
never described his method of extrapolation and stated that he was unaware of
the amounts of cocaine ingested by Watson or his “rate of consumption.”

            Watson did not dispute
Dr. Glass’s qualifications to render an expert opinion as to his alleged
impairment.  Nonetheless, he contended, and we agree, that there was an “analytical
gap” in Dr. Glass’s analysis of whether Watson was impaired when he treated
Fitzpatrick.  Because Dr. Glass failed to describe his methodology, the trial
court was presented with an expert opinion that was ultimately no more than Dr.
Glass’s ipse dixit.  See Tennyson v. Phillips, No.
12-02-00154-CV, 2004 WL 63158, at *10 (Tex. App.–Tyler Jan. 14, 2004, pet.
denied) (mem. op.) (describing a similar analytical gap).  Based upon the
record before us, we hold that the trial court did not abuse its discretion by
excluding Dr. Glass’s expert extrapolation opinion as to impairment.  See id.
(reaching a similar conclusion).  We overrule the Fitzpatricks’ first issue.

 

Other Evidence of Impairment

            In their second issue,
the Fitzpatricks challenge the trial court’s exclusion of evidence that Watson
was a user of cocaine and, as such, was impaired during his treatment of Thomas
Fitzpatrick.  This evidence included expert testimony that Watson was a regular
cocaine user, as well as admissions by Watson himself as to his use of
cocaine.  The evidence also included expert testimony from Dr. Glass and Dr.
Gary Freeman, a board certified orthopedic surgeon, that Watson was impaired
during Fitzpatrick’s treatment.  Watson filed a motion to exclude evidence of
use and impairment, arguing that the value of such evidence was substantially
outweighed by the danger of unfair prejudice.  The trial court granted the
motion to exclude.

Standard of Review

            We review the trial
court’s exclusion of evidence, including expert testimony, under an abuse of
discretion standard of review.  Gregg County Appraisal Dist. v. Laidlaw
Waste Sys., Inc., 907 S.W.2d 12, 19 (Tex. App.–Tyler 1995, writ
denied); see Neal, 74 S.W.3d at 471.  Under rule 403 of
the Texas Rules of Evidence, a trial court may exclude evidence if “its
probative value is substantially outweighed by the danger of unfair prejudice.”
 Tex. R. Evid. 403.  As stated
above, a trial court abuses its discretion when its decision is arbitrary,
unreasonable, or without reference to any guiding rules or legal principles.  Honeycutt,
24 S.W.3d at 360.  “The mere fact that a trial judge may decide a matter within
his discretionary authority in a different manner than an appellate judge in a
similar circumstance does not demonstrate that an abuse of discretion has
occurred.”  Downer, 701 S.W.2d at 242.

Dr. Freeman

            Unlike Dr. Glass, Dr.
Freeman’s expert opinion was not based upon any form of extrapolation. 
Instead, Dr. Freeman simply opined that Watson should have ordered that Fitzpatrick’s
arm be x-rayed in order to check for the presence of suspected glass.  Dr.
Freeman testified as follows regarding the correlation between Watson’s failure
to order an x-ray and impairment:

 

[T]here
are two [possible] reasons he didn’t take the x-ray.  One is he’s dumb.  He’s
not dumb.  He’s intelligent.  He’s got degrees.  The other reason he didn’t
take the x-ray is he was not thinking clearly.  Now, if that rises to
impairment, then there it is.  If it’s conscious indifference, then there it is.
 But he was not thinking clearly.  Therefore, arguendo, you would have to
implicate the admitted use of drugs . . . .

 

 

However, Dr. Freeman failed rule
out other possible causes of Watson’s conduct.  And the trial court had
Watson’s testimony before it.  Watson, testifying as a formerly licensed and
board certified emergency medicine physician, stated that he did not order an
x-ray because he did not believe it was necessary.  He believed that any harm
to Fitzpatrick’s nerves had already occurred and that any possible foreign object
would not cause additional harm.  

            Dr. Freeman failed to
show from his testimony that his opinion regarding impairment was anything more
than one possible scenario.  Instead, he merely applied “backwards reasoning”
to Watson’s treatment of Fitzpatrick: Watson did not order an x-ray, Watson was
an admitted cocaine user, so Watson’s cocaine use must have been the cause of
Watson’s failure to order an x-ray. See Dudley v. Humana Hosp. Corp.,
817 S.W.2d 124, 127 (Tex. App.–Houston [14th Dist.] 1991, no writ) (“Otherwise,
we find ourselves reasoning backwards: the operation was not successful, the
Doctor had some personal problems that were probably stressful, therefore the
Doctor’s stress must have caused him to do some act of negligence that
proximately caused the damage.”).  Such reasoning, in light of the serious
nature of the excluded testimony, could have been considered insufficient to overcome
a rule 403 prejudice objection.  See id. (reaching a similar
conclusion).  Under these circumstances, we cannot say that the trial court
abused its discretion by excluding Dr. Freeman’s opinion under rule 403.  See
id.

Dr. Glass

            In addition to his
extrapolation opinion, Dr. Glass offered an opinion that Watson’s decision to
suture Fitzpatrick’s arm and send him home without immobilization demonstrated
such a deviation from appropriate care that, in light of Watson’s history of
drug abuse, it could be inferred that Watson was impaired.  However, Dr. Glass
admitted in his deposition that, with the exception of the above treatment, he
was unable to point to any objective conduct by Watson that would demonstrate
impairment.

            This opinion suffers
from the same failure as Dr. Freeman’s opinion – the failure to show that
impairment was anything more than one possible scenario.  As above, this is
because Watson offered another plausible reason for his care decisions. 
Therefore, as with Dr. Freeman, Dr. Glass’s opinion could have been considered insufficient
to overcome a rule 403 prejudice objection.  See id.  We cannot
say that the trial court abused its discretion by excluding Dr. Glass’s opinion
under rule 403.  See id.

Evidence of Cocaine Use

            The remaining evidence
of cocaine use includes Watson’s admissions as well as other evidence of
Watson’s history of cocaine use.  None of this evidence showed that Watson was
actually impaired on the day he treated Thomas Fitzpatrick.  Instead, it merely
showed that impairment on that day was possible.  And we have already
determined that the trial court did not abuse its discretion by excluding the
only evidence of Watson’s actual impairment on the day in question – the expert
testimony of Dr. Freeman and Dr. Glass.

            Generally, drug use,
without further evidence of negligence, is inadmissible.  See Bedford v.
Moore, 166 S.W.3d 454, 465 (Tex. App.—Fort Worth 2005, no pet.).  That
is, evidence of drug use must provide some explanation for the negligence and
improper conduct. See id.  However, this explanation was not
present in the case before us because the evidence of drug use did not connect
Watson’s history of cocaine use to impairment at the time of Thomas
Fitzpatrick’s treatment.  Therefore, the evidence did not connect that history
to causation.  See id. (“Further, because Dr. Drew could not
identify any particular level of the drug in Moore’s system at [the] time of
the accident or state that the amount of the drug in her system was at a level
at which any impairment could be adduced, there was no evidence that the
presence of the drug was a causative factor in the accident.”).  We hold that
the trial court did not abuse its discretion by excluding the proffered
evidence.

Conclusion

            The trial court did not
abuse its discretion by excluding the expert opinions of Dr. Freeman and Dr.
Glass.  Further, the trial court did not abuse its discretion by excluding the
remaining evidence of cocaine use.  Therefore, we overrule the Fitzpatricks’
second issue.

 

Disposition

            We affirm
the judgment of the trial court.

 

 

                                                                                                Sam Griffith

                                                                                            
           Justice

 

 

 

Opinion delivered January 29, 2010.

Panel consisted of
Worthen, C.J., Griffith, J. and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)









                [1]
The Fitzpatricks have
stated three separate issues in their brief.  Because their second and third
issues, as stated, relate solely to harm, we have concluded that these issues
are actually subparts of their first issue.  Moreover, their first issue
relates to both the reliability of expert testimony and the prejudicial effect
of evidence concerning cocaine use.  We have addressed these questions
separately and, for ease of reference, refer to them as the Fitzpatricks’ first
and second issues, respectively.

 





 

                [2] The term “ipse dixit”
means “something asserted but not proved” and is literally translated “he
himself said it.”  Tennyson v. Phillips, No. 12-02-00154-CV, 2004
WL 63158, at *9 n.12 (Tex. App.–Tyler Jan. 14, 2004, pet. denied) (mem. op.).