

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

## No. 02-23-00055-CV

———————————————

TEXAS HEALTH HARRIS METHODIST HOSPITAL SOUTHWEST FORT
WORTH, Appellant and Appellee

V.

JOHN DAVIS, INDIVIDUALLY AND AS GUARDIAN OF THE PERSON AND
ESTATE OF ANGELA DAVIS, AN INCAPACITATED PERSON,
Appellee and Appellant

On Appeal from Probate Court No. 2
Tarrant County, Texas
Trial Court No. 2014-GD00516-2-A

Concurring and Dissenting Memorandum Opinion by Justice Walker

**CONCURRING AND DISSENTING MEMORANDUM OPINION**

While I concur in the majority's holdings that the evidence was legally sufficient to support the jury's negligence finding against Harris and that it was error for the trial court to admit the CMS-Conditions evidence, I respectfully dissent to the majority's holding that such error was harmful and reversible. I do not believe that we can conclude—on this record—that the error probably led to an improper judgment.

As the majority explained, we may only reverse the trial court's judgment in this case if its error in admitting the CMS Conditions "probably caused the rendition of an improper judgment." Tex. R. App. P. 44.1(a)(1). "Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted." *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001) (op. on reh'g); *see Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008) ("[I]f erroneously admitted or excluded evidence was crucial to a key issue, the error was likely harmful.").

Davis used the CMS Conditions to support his vicarious-liability claim against Harris. Namely, Davis claimed that the CMS Conditions presented evidence showing that Harris was required to control Sundance and Dr. Leitch and that, therefore, under the applicable standard of care, Harris was responsible for their negligence. The majority concludes (and I agree) that the slight probative value of the CMS Conditions was "substantially outweighed by the danger of misleading the jury into

2

believing that the CMS Conditions imposed vicarious liability on Harris" for the actions of Sundance and Dr. Leitch (in performing his duties for Sundance). However, the jury charge in this case almost wholly extinguished that danger because the question of Harris's vicarious liability was not submitted to the jury.

In relevant part, the jury charge instructed on Harris's negligence as follows:

A hospital acts in the manner which i[t] formulates and follows its policies, procedures, rules, bylaws, and [other] governing protocols, whether express or implied.

A hospital acts through its agents, employees, officers, and representatives, and those acts are the acts of the hospital.

In considering the negligence of [Harris] do not consider the acts or omissions of [Dr. Leitch] in his practice of medicine, Heather Goforth, CRNA, or Vicki Tucker, CRNA.

The majority argues that the question of Harris's vicarious liability for Sundance's and Dr. Leitch's negligence was, in fact, given to the jury:

But the jury charge instructed the jury that "[a] hospital acts through its agents, employees, officers, and representatives, and those are the acts of the hospital." The Committee on Pattern Jury Charges has made clear that this instruction is to be used "when the claim is for the hospital's *vicarious liability* based on conduct of a hospital's agents or employees." Comm. on Pattern Jury Charges, State Bar of Tex., *Tex. Pattern Jury Charges: Malpractice, Premises & Products* PJC 50.2 & cmt. (2022) (emphasis added). Thus, there was a vicarious-liability submission through the trial court's instruction. [Footnote omitted.]

The Committee did not stop there, though, in explaining the use of instruction 50.2. It continued:

However, when this instruction is used and there is no claim that the hospital is liable for the acts of the independent contractor physician,

3

*Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 863 (Tex. 2009), indicates that the following instruction should also be given, substituting the name of the independent contractor physician:

> In considering the negligence of [*Hospital*], do not consider the acts or omissions of *the independent contractor physician*.

Comm. On Pattern Jury Charges, *supra*, PJC 50.2 & cmt.

The charge here did just that. It instructed the jury that, in considering Harris's negligence, it was not to consider the "acts or omissions" of Dr. Leitch ("in his practice of medicine"), Goforth, or Tucker. Thus, the implication was that the jury *could* consider Dr. Leitch's administrative acts or omissions as director of the Harris anesthesia department to formulate and enforce Harris's own medication-handling policies (as Davis alleged in his petition) but could *not* consider his acts or omissions related to the actual handling of the syringes in the operating room that occurred within his work as an independent contractor/Sundance physician (or the similar acts or omission of Sundance's nurses). Because a business entity like Sundance "can act only through human agents," *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 188 (Tex. 2007) (orig. proceeding), and because the jury was instructed not to consider the actions of Sundance's human agents in relation to Harris's negligence, this particular instruction leaves little room for the jury to have been confused about whether they were being asked to impute Sundance's negligence or Dr. Leitch's medical negligence to Harris vicariously.

4

The remainder of the record and charge further weakens the probability of an improper verdict based on the jury's using the CMS Conditions to adjudge Harris vicariously liable for Sundance's or Dr. Leitch's negligence. At the charge conference, Davis requested the addition of questions about whether Dr. Leitch and Sundance "on the occasion in question" had been acting "for the benefit of" Harris and "subject to [Harris's] control." Harris argued that these instructions asked inappropriate vicarious-liability questions. The trial court agreed with Harris and denied Davis's requested instructions. Thus, the trial court deliberately acted to ensure that the charge did not contain any instructions that would have allowed the jury to determine improper vicarious liability. And, indeed, the charge does not contain any of the relevant vicarious-liability pattern-jury-charge instructions. *See, e.g.,* Comm. on Pattern Jury Charges, State Bar of Tex., *General Negligence, Intentional Personal Torts & Workers' Compensation* PJC 10.1 (2022) (instructing on question of a person's employment status related to the principal), 10.2 (instructing on question of borrowed employees), 10.6 (instructing on question of scope of a person's employment), 10.10 (instructing on whether a nonemployee acted for the benefit of and subject to the control of the principal).

Instead, the jury was asked to answer only four questions: (1) did the negligence of Goforth, Tucker, Dr. Leitch, Sundance, or Harris proximately cause the injury in question? (the jury answered affirmatively as to Sundance and Harris); (2) what percentage of responsibility was attributable to each? (the jury answered 35 percent to

5

Sundance and 65 percent to Harris); and questions (3) and (4) asked the jury to set damages amounts.

By law and logic, the charge's confines gave the jury no leeway to have decided any vicarious-liability issues. Under the doctrine of vicarious liability, an employer (including a hospital) can be held liable for the negligence of its employees or agents even if the employer itself was not negligent. *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 910 (Tex. App.—Fort Worth 2009, pet. denied). If an employer is vicariously liable, it stands in the same position as its employee or agent, and 100 percent of the employee's or agent's liability is imputed to the employer. *See Werner Enters., Inc. v. Blake*, 672 S.W.3d 554, 634 (Tex. App.—Houston [14th Dist.] 2023, pet. filed) (en banc); *Bedford v. Moore*, 166 S.W.3d 454, 460–61 (Tex. App.—Fort Worth 2005, no pet.); *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 657 (Tex. App.—Dallas 2002, pet. denied); *F.F.P. Operating Partners, L.P. v. Duenez*, 69 S.W.3d 800, 808 (Tex. App.—Corpus Christi–Edinburg 2002), *rev'd on other grounds*, 237 S.W.3d 680 (Tex. 2007) (op. on reh'g). Thus, when the issue of vicarious liability is submitted to the jury, "the employer's negligence is *not* submitted because the employer and employee are considered to be one and the same." *Bedford*, 166 S.W.3d at 461 (emphasis added). However, if the jury is asked instead to determine the employer's direct liability—for example, whether the employer used reasonable care in formulating its policies and procedures—the proper submission is to include the

6

employer's alleged negligence "in an initial liability question and in the comparative negligence questions." *Id.* at 462–63.

Here, the questions of Harris's alleged direct negligence and comparative negligence *were* submitted to the jury. But such submissions would have been improper if the jury had also been asked to answer vicarious-liability questions. *See id.* Further, the jury's apportioning 35 percent negligence to Sundance and 65 percent to Harris shows that the jury did not impute Sundance's negligence onto Harris vicariously because if Harris had been adjudged vicariously liable, it necessarily would have been imputed with 100 percent of Sundance's liability. Instead, it appears that the jury properly understood their assignment and determined each entity's negligence related to the formulation of their medication policies separate and apart from one another.

The majority posits that the "jury found Sundance negligent and could have imputed Sundance's negligence to Harris." For the reasons set forth above, I see little probability that this occurred given what was actually submitted to the jury.

Because the jury charge did not allow for vicarious-liability findings, there could not have been harm in admitting the CMS Conditions because their only alleged relevance pertained to Davis's vicarious-liability claim. Put differently, because the jury was not given the opportunity to find Harris vicariously liable, the judgment could not and did not "turn on" the admission of the CMS Conditions. *See Interstate Northborough P'ship*, 66 S.W.3d at 220. Accordingly, I would hold—under the specific

7

facts of this case—that the trial court's error did not "probably cause[] the rendition of an improper judgment." *See* Tex. R. App. P. 44.1(a)(1).

/s/ Brian Walker

Brian Walker
Justice

Delivered:  August 1, 2024