NUMBER 13-07-00245-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 
 

JON PICKARD, INDIVIDUALLY AND

AS ADMINISTRATOR OF THE ESTATE OF

MELVIN PICKARD, DECEASED, AND ON BEHALF

OF ALL WRONGFUL DEATH BENEFICIARIES, Appellant,


v.
 


ARTHUR R. BROWN, M.D., ET AL., Appellees.

 


On appeal from the 253rd District Court of Liberty County, Texas.


 




MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Benavides


Memorandum Opinion by Justice Benavides



 In this medical malpractice action, appellant, Jon Pickard, individually and as
administrator of the estate of Melvin Pickard, and on behalf of all wrongful death
beneficiaries, appeals from a take-nothing judgment. (1) Pickard raises two appellate issues: 
(1) the trial court erred by granting partial summary judgment to appellee, Arthur R. Brown,
M.D., in his individual capacity; and (2) the trial court erred by failing to include Brown in
jury charge questions one through four. (2) We affirm.

I. Factual and Procedural Background 


 On January 11, 2002, Melvin received a check-up at Liberty Medical Surgical Clinic
(the "Clinic"), and he became a patient of Rebecca Daley, D.O. (3) Daley diagnosed Melvin
with diabetes mellitus, renal failure, and coronary artery disease. On January 14, 2002,
Melvin returned to the Clinic for a follow-up visit. Daley determined that Melvin had
elongated and enlarged toenails and scaling of his feet. Additionally, Daley diagnosed
Melvin with "atrial fibrillation, onychodystrophy, congestive heart failure, and dystrophic
changes in the nails occurring as a congenital defect or due to any illness or injury that may
cause a malformed nail." 

 On March 2, 2002, Melvin was admitted to Liberty-Dayton Hospital due to a urinary
tract infection and pneumonia. Steven Ellerbe, M.D., admitted Melvin to the hospital
because Daley was on vacation at the time. On March 8, 2002, Melvin was discharged
from the hospital and transferred to Golden Charm Nursing Center ("Golden Charm"). 
Arthur R. Brown, M.D., was the medical director of Golden Charm, a partner with Daley in
the Clinic, and a supervisor of Karen Collins, P.A., a physician's assistant. 

 Collins saw Melvin at least once a month while he was resident at Golden Charm. 
Collins typically relied on Melvin's nurses to inform her about any wounds he may have
had. While at Golden Charm, Melvin had a myriad of chronic problems, including weight
loss, skin breakdown, and urinary tract infections.

 On November 7, 2002, Melvin's family assumed Melvin's care, removing him from
Golden Charm and seeking assistance from a home health agency. On November 13,
2002, Brandon Smith, P.A., another physician's assistant, visited Melvin at home. Smith
consulted with Brown, and Brown recommended admitting Melvin to Triumph Hospital for
wound care. On December 12, 2002, Melvin was transferred to East Houston Medical
Center where, due to extensive development of ulcers on his heels, his right leg was
amputated above the knee. Melvin developed pneumonia and passed away on December
26, 2002. 

 Pickard, the administrator of Melvin's estate, brought a medical malpractice suit
against Brown, Ellerbe, Daley, Collins, the Clinic, and Golden Charm, among others. 
Brown filed a motion for summary judgment, asserting that he was not a cause of Melvin's
death or injuries. The trial court granted partial summary judgment as to Brown, removing
him from individual liability in the case, but leaving him exposed to "claims and causes of
action for his vicarious liability based upon agency and/or the doctrine of respondeat
superior." The case was then tried to a jury.

 During the charge conference, the parties stipulated that Brown, Ellerbe and Collins
were, at all material times, acting within the course and scope of their agency as agents
of the Clinic. Regarding the charge itself, the trial court initially included Brown in questions
(1) through (4), the ordinary negligence and apportionment questions. Brown objected on
the grounds that, after the partial summary judgment, he could not be liable individually. 
The trial court agreed and removed Brown from those questions in the court's charge. The
jury found no negligence on the part of the named defendants. The trial court rendered
judgment on the verdict. This appeal followed.

II. Was Brown's Motion for Summary Judgment Properly Granted?

 In his first appellate issue, Pickard argues that the trial court erred in granting partial
summary judgment for Brown. Pickard asserts that the motion for summary judgment filed
by Brown was a traditional motion for summary judgment and that Brown failed to meet his
burden under rule 166a. See Tex. R. Civ. P. 166a(c); IHS Cedars Treatment Ctr. of
DeSoto, Texas, Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2003); Am. Tobacco Co., Inc.
v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). Brown counters that his motion was a
"hybrid" motion for summary judgment that combined both a traditional and a no-evidence
motion for summary judgment and that Pickard failed to meet his burden under rule 166a. 
See Tex. R. Civ. P. 166a(i); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex.
2002). We agree with Brown.

A. Was Brown's motion for summary judgment traditional or "hybrid"?

 In a traditional motion for summary judgment, the movant must demonstrate that
there are no genuine issues of material fact and that he is entitled to judgment as a matter
of law. Mason, 143 S.W.3d at 798. To do so, the movant either negates one or more of
the essential elements of the non-movant's cause of action or conclusively establishes all
elements of the movant's defense. Grinnell, 951 S.W.2d at 425. In a no-evidence motion
for summary judgment, the movant alleges that there is no evidence to establish an
essential element of the non-movant's claim. Grant, 73 S.W.3d at 215. 

 The movant may file both motions in the same document and attach evidence
supporting his traditional motion for summary judgment without converting the entire
motion into a traditional motion for summary judgment. Binur v. Jacobo, 135 S.W.3d 646,
651 (Tex. 2004). "If a motion clearly sets forth its grounds and otherwise meets rule 166a's
requirements, it is sufficient to raise both traditional and no-evidence grounds for summary
judgment, even if the motion does not clearly delineate or segregate those grounds." Sipes
v. City of Grapevine, 146 S.W.3d 273, 278 (Tex. App.-Fort Worth 2004), rev'd in part on
other grounds, 195 S.W.3d 689 (Tex. 2006); see Binur, 135 S.W.3d at 651. 

 In the present case, Brown filed a "hybrid" motion for summary judgment attacking
the causation element of Pickard's medical malpractice claim. See generally Williams v.
Huber, 964 S.W.2d 84, 86 (Tex. App.-Houston [14th Dist.] 1997, no writ) (setting forth the
elements of a medical malpractice claim). From the outset of his motion, Brown asserted
his entitlement to judgment as a matter of law, claiming he did not cause Melvin's death. 
Neither party contests whether Brown's motion included a traditional motion for summary
judgment. 

 Additionally, Brown set forth the standard for no-evidence summary judgments,
properly referencing rule 166a(i). See Tex. R. Civ. P. 166a(i). Brown claimed he was
entitled to summary judgment because he was not involved in the treatment of Melvin and
did not cause Melvin's injuries or death. Brown set out the elements of a medical
malpractice claim and noted that expert testimony is, almost without exception, required
to prevail on summary judgment in medical malpractice cases. Williams, 964 S.W.2d at
84; Chopra v. Hawryluk, 892 S.W.2d 229, 231 (Tex. App.-El Paso 1995, writ denied)
(citing Hart v. Van Zandt, 399 S.W.2d 791, 792 (Tex. 1966)). Brown then identified the
causation element by stating in both his original motion and in his supplement to the
motion that he "did not cause Mr. Pickard's injuries or death." Brown also noted that there
was no proof in the medical records demonstrating that he was a cause of Melvin's death
or injuries.

 The Texas Supreme Court has noted its preference for using headings, if not
separate motions, to differentiate between the two types of summary judgment motions. 
See Binur, 135 S.W.3d at 651 (noting that many courts have declared that traditional and
no evidence motions should be filed separately). We agree with the supreme court that
such a simple solution would very nearly eradicate issues such as the present one. Merely
organizing the motions under appropriate headings should not substantially burden trial
counsel. That being said, as the court noted, the rule does not require such simple
precision. Id. We find that Brown filed both a traditional and no-evidence motion for
summary judgment.

B. Was Brown's motion for summary judgment properly granted?

 Having determined that Brown filed both kinds of motions for summary judgment,
we turn to Pickard's argument that the motion was improperly granted because he raised
a genuine issue of material fact.

 1. Standards of Review

 Because a no-evidence summary judgment is essentially a pretrial directed verdict,
we apply the legal sufficiency standard of review. King Ranch, Inc. v. Chapman, 118
S.W.3d 742, 750-51 (Tex. 2003). Therefore, we consider the evidence "in the light most
favorable to the party against whom the summary judgment was rendered, crediting
evidence favorable to that party if reasonable jurors could, and disregarding contrary
evidence unless reasonable jurors could not." Mack Trucks, Inc. v. Tamez, 206 S.W.3d
572, 582 (Tex. 2006).

 We review the trial court's granting of a traditional motion for summary judgment de
novo. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). When we
review a traditional motion for summary judgment, "we indulge every reasonable inference
and resolve any doubts in the nonmovant's favor." Id. We treat all evidence favorable to
the nonmovant as true. Id.

 In the present case, the trial court did not identify the grounds upon which it granted
Brown's partial summary judgment. When such a situation arises, we will uphold the trial
court's order if any of the grounds presented to the trial court are meritorious, so long as
they have been preserved for our review. Provident Life & Accident Ins. Co. v. Knott, 128
S.W.3d 211, 217 (Tex. 2003). Additionally, when the grounds are not identified, and there
are multiple grounds upon which summary judgment could be granted, the nonmovant
must negate all grounds on appeal. Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473
(Tex. 1995); State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 381 (Tex. 1993).

 We first review the granting of summary judgment based on the standards of rule
166a(i). Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004); see Tex. R. Civ.
P. 166a(i). Under rule 166a(i), the movant must allege that there is no evidence of a
material element of the adverse party's claim. Tex. R. Civ. P. 166a(i); Grant, 73 S.W.3d
at 215. While not required to marshal its proof, the nonmovant must produce summary
judgment evidence that raises a genuine issue of material fact. Ridgway, 135 S.W.3d at
600; Grant, 73 S.W.3d at 215. 

 A genuine issue of material fact exists when there is more than a scintilla of
evidence produced to support the existence of the challenged element. Ridgway, 135
S.W.3d at 600. More than a scintilla of evidence is that amount of evidence that would
allow reasonable and fair-minded people to disagree in their conclusions. Id. at 601. If the
evidence only creates a surmise or a suspicion of the fact, then the evidence is less than
a scintilla. Id. If Pickard, the non movant, produces more than a scintilla of evidence, then
we consider whether he has met the burden imposed by rule 166a(c). Id. at 600; Tex. R.
Civ. P. 166a(c).

 In a traditional motion for summary judgment, the movant must demonstrate that he
is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); see City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 679 (Tex. 1979) ("The movant . . . must
establish his entitlement to a summary judgment on the issues expressly presented to the
trial court by conclusively proving all essential elements of his cause of action or defense
as a matter of law."). Once the movant has negated an element of the nonmovant's claim,
thereby establishing his right to summary judgment, the burden shifts to the nonmovant to
produce evidence sufficient to raise an issue of fact regarding each challenged element. 
Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995). We will uphold a
traditional summary judgment when the movant has met his burden and the summary
judgment record demonstrates the absence of a genuine issue of material fact. See Tex.
R. Civ. P. 166a(c); Clear Creek Basin, 589 S.W.2d at 678. 

 The plaintiff, in order to prevail on a medical malpractice claim, must establish four
elements: "(1) a duty requiring the defendant to conform to a certain standard of conduct;
(2) the applicable standard of care and its breach; (3) resulting injury; and (4) a reasonably
close causal connection between the alleged breach of the standard of care and the
alleged injury." Williams, 964 S.W.2d at 86. Expert testimony is almost always necessary
to either prevent or prevail on summary judgment in a medical malpractice case. Id.;
Chopra, 892 S.W.2d at 231 ("In determining negligence in a case such as this, which
concerns the highly specialized art of treating disease, the court and jury must be
dependent on expert testimony.")).

 2. Discussion

 In response to Brown's motion, Pickard attached medical records and expert
testimony addressing the proper standards of care and the causes of Melvin's death. The
medical records do not indicate, in any way, that Brown's conduct was a proximate cause
of Melvin's death. The records reflect that Brown ordered, among other things, (1) a blood
test, (2) a CT scan, and (3) a transfer to a nursing home for Melvin. 

 The expert's report similarly lacked any evidence that Brown proximately caused
Melvin's injuries or death. The expert described four instances of breaches of the
standards of care that were, in his opinion, proximate causes of Melvin's death or injuries. 
First, the expert noted that the "accepted standard of nursing home care" is for every
nursing home resident to have completed and documented in his chart a complete and
thorough "History and Physical examination." Additionally, according to the expert, the
standard of care requires the "attending physician" to "document a legible monthly progress
note, which should adequately address ongoing medical concerns and the planned course
of intervention." Regarding this first alleged breach, the expert concluded, "The breach of
[the accepted standard of nursing home care] appears to have occurred in [Melvin]
because there is no adequate documentation that Dr. Ellerbe followed these national
standards." The expert asserted this alleged breach, with the development of the right heel
ulcer which ultimately led to amputation complicated by sepsis, was the proximate cause
of Melvin's death. 

 Second, the expert stated that the breach of the "accepted medical standard of care
for a patient at risk for reoccurring urinary tract infections" "more likely than not contributed
to [Melvin's] final episode of sepsis associated with [Melvin's] post-amputation decline, the
proximate cause of his death." The expert noted that this breach was committed by the
staff at the Golden Charm but did not identify any staff or medical personnel by name.

 Third, the expert asserted that the "accepted nursing home standard of care"
required the Golden Charm's staff to "ensure the safety and well being of each individual
nursing home resident and to help them maintain optimal independence and health . . .
includ[ing] discharging a patient to a safe environment with the ongoing uninterrupted
required medical care." According to the expert, the Golden Charm staff "failed to provide
an adequate comprehensive discharge plan of care" that was "more likely than not . . . the
precipitating factor in the subsequent decline of Mr. Pickard's right heel ulcer," the decline
of which "contributed the proximate cause of [Melvin's] death."

 Fourth, the expert alleged that Collins's acts or omissions violated the "accepted
standard of nursing home care." The expert noted:

 The failure of the physician assistant's conduct to adequately evaluate,
assess and initiate treatment for Mr. Pickard's ongoing wound care and
nutritional needs caused Mr. Pickard to develop a right heel ulcer as well as
a malnourished state which would eventually require amputation including
the complications of sepsis, was the proximate cause leading to premature
death.

 

 Nowhere in the report did the expert assert that Brown, in his individual capacity or
otherwise, breached any applicable standard of care, nor did the expert give any indication
that any of Brown's acts or omissions were a proximate cause of Melvin's injuries and
death. As such, the expert's report gives rise to no more than a suspicion or surmise
regarding Brown's connection, if any, to Melvin's death and injuries. See generally 
Ridgway, 135 S.W.3d at 601 (noting that a genuine issue of material fact requires the
presentation of evidence that "trascend[s] mere suspicion"). We find that Pickard failed to
produce more than a mere scintilla of evidence demonstrating that Brown's acts or
omissions were a proximate cause of Melvin's injuries or death, and the trial court properly
granted summary judgment to Brown in his individual capacity. 

III. Was Brown Properly Excluded from the Jury Charge?

 Pickard, in his second appellate issue, asserts that the trial court erred in excluding
Brown from questions (1) through (4) in the jury charge. (4) The trial court excluded Brown
because, due to the partial summary judgment, Brown's liability could only be based on
vicarious liability and the doctrine of respondeat superior. Pickard contends that Brown's
personal negligence was tried by consent. Collins and Ellerbe were the only two parties
included in questions (1) through (4). The jury determined that neither person was
negligent, and it properly did not answer the apportionment questions. We agree with the
trial court's decision to exclude Brown from the ordinary negligence and apportionment
questions.

 A. Standard of Review

 We apply an abuse of discretion standard when reviewing the submission of jury
questions. Tex. R. Civ. P. 277; Tex. Dep't of Human Servs. v. E.B., 802 S.W.2d 647, 649
(Tex. 1990). If the trial court acts (1) without reference to any guiding rules or principles,
(2) arbitrarily, or (3) unreasonably, the court has abused its discretion. Goode v. Shoukfeh,
943 S.W.2d 441, 446 (Tex. 1997). For this Court to reverse the trial court's decision based
on charge error, the error must have been harmful; that is, it must have "probably caused
the rendition of an improper judgment." Tex. R. App. P. 44.1; see Tex. Disposal Sys.
Landfill, Inc. v. Waste Mgmt. Holdings, Inc., 219 S.W.3d 563, 580 (Tex. App.-Austin 2007,
no pet.).

 B. Applicable Law 

 An issue may be "tried by consent when evidence on the issue is developed under
circumstances indicating that both parties understood the issue was in the case, and the
other party fails to make an appropriate complaint." Johnson v. Structured Asset Servs.,
LLC, 148 S.W.3d 711, 719 (Tex. App.-Dallas 2004, no pet.). "Trial by consent applies in
the exceptional case where it clearly appears from the record as a whole that the parties
tried an unpled issue." Reed v. Wright, 155 S.W.3d 666, 670 (Tex. App.-Texarkana 2005,
pet. denied). "'Certainly issues are not tried merely by the hearing of testimony thereon.'" 
Sage Street Assocs. v. Northdale Const. Co., 863 S.W.2d 438, 446 (Tex. 1993). 

 Respondeat superior--the theory of Brown's potential liability remaining after the
partial summary judgment--is based on vicarious liability: the doctrine that one party,
though not negligent itself, is responsible for the negligence of another party based on the
relationship between the parties. Vecellio Ins. Agency, Inc. v. Vanguard Underwriters, 127
S.W.3d 134, 138 (Tex. App.-Houston [1st Dist.] 2003, no pet.); St. Anthony's Hosp. v.
Whitfield, 946 S.W.2d 174, 178 (Tex. App.-Amarillo 1997, writ denied). "To impose liability
on an employer for the tort of his employee under the doctrine of respondeat superior, the
employee's act must fall within the scope of the employee's general authority and must be
in furtherance of the employer's business and for the accomplishment of the object for
which the employee was hired." Wilson v. H.E. Butt Grocery Co., 758 S.W.2d 904, 906
(Tex. App.-Corpus Christi 1988, no writ) (citing Robertson Tank Lines, Inc. v. Van Cleave,
468 S.W.2d 354, 357 (Tex. 1971)). The doctrine of respondeat superior requires the
plaintiff to prove that the employee was negligent and that the employee's negligence was
the proximate cause of the plaintiff's injuries. DeWitt v. Harris County, 904 S.W.2d 650,
654 (Tex. 1995); Marange v. Marshall, 402 S.W.2d 236, 239 (Tex. Civ. App.-Corpus
Christi 1966, writ ref'd n.r.e.). Without such proof--that the employee committed the tort
while acting in the scope of his employment--the employer has no liability. See Bedford
v. Moore, 166 S.W.3d 454, 460 (Tex. App.-Fort Worth 2005, no pet.); Rosell v. Cent. W.
Motor Stages, Inc., 89 S.W.3d 643, 656 (Tex. App.-Dallas 2002, pet. denied).

 C. Discussion

 We disagree with Pickard that Brown's personal liability was tried by consent. 
Pickard does not direct us to any authority supporting this argument. See Tex. R. App. P.
38.1. Also, it is not clear from the record that the parties "understood the issue was in the
case" because Brown's personal liability had already been removed from the case by the
entry of the partial summary judgment. See Johnson, 148 S.W.3d at 719; Jay Fikes &
Assocs. v. Walton, 578 S.W.2d 885, 889 (Tex. Civ. App.-Amarillo 1979, writ ref'd n.r.e.)
(holding that trial by consent "is not intended to establish a general rule of practice and
should be applied with care, and in no event in a doubtful situation."). Brown's personal
liability was not tried by consent. 

 We also believe that the trial court properly excluded Brown from the ordinary
negligence and apportionment questions because, after the partial summary judgment,
Brown could only be found vicariously liable as an employer or principal, if liable at all. The
trial court will not ask the jury an immaterial question such as whether a potential
vicariously liable party is a direct cause of the injury. See Bedford v. Moore, 166 S.W.3d
454, 460 (Tex. App.-Fort Worth 2005, no pet.); see generally William D. Underwood &
Michael D. Morrison, Apportioning Responsibility in Cases Involving Claims of Vicarious,
Derivative, or Statutory Harm Directly Caused by the Conduct of Another, 55 Baylor L.
Rev. 617, 635-36 (2003) (noting that, in vicarious liability cases, courts do not ask whether
any of the employer's conduct caused the injury in question "because all that matters is
whether the requisite relationship exists between the [employee] and the employer"). This
is so because even if the principal/employer was free from negligence, it may still be
responsible for the negligence of his agent/employee. Bedford, 166 S.W.3d at 460. All
that matters is whether the requisite relationship exists between the principal/agent or
employer/employee. See Wilson, 758 S.W.2d at 906. For the same reasons, the
principal/employer should not be included in the apportionment question, and nothing in
section 33.003 so requires. See Tex. Civ. Prac. & Rem. Code Ann. § 33.003 (Vernon
2008); Rosell, 89 S.W.3d at 656 ("[I]t would not be proper for an employer to be submitted
along with the driver if its only responsibility was that of respondeat superior."). We hold
that the trial court properly excluded Brown from questions (1) through (4) of the jury
charge.

IV. Conclusion

 Having overruled all of Pickard's appellate issues, we affirm the decision of the trial
court.

 ________________________________

 GINA M. BENAVIDES,

 Justice


Memorandum Opinion delivered and

filed this the 22nd day of January, 2009. 


 
1. For the sake of clarity, we will refer to the Plaintiff/Appellant Jon Pickard as "Pickard" and to the
deceased, Melvin Pickard, as Melvin.
2. The Notice of Appeal, Appellant's Brief, and Appellee's Brief list as Appellees all Defendants from
the court below; however, the issues raised by Pickard involve only Brown. Thus, while the style of the case
remains the same, we address the issues only as they relate to Brown.
3. Doctor of Osteopathic Medicine; see http://www.osteopathic.org/index.cfm?PageID=ado_whatis 
(last visited January 6, 2009).
4. Questions (1) and (2) were ordinary negligence questions regarding Melvin's injuries and death,
respectively. Questions (3) and (4) were the apportionment questions.