

## NUMBER 13-07-00245-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

JON PICKARD, INDIVIDUALLY AND
AS ADMINISTRATOR OF THE ESTATE OF
MELVIN PICKARD, DECEASED, AND ON BEHALF
OF ALL WRONGFUL DEATH BENEFICIARIES,            Appellant,

v.

ARTHUR R. BROWN, M.D., ET AL.,                 Appellees.

---

On appeal from the 253rd District Court of Liberty County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Justice Benavides**

In this medical malpractice action, appellant, Jon Pickard, individually and as

administrator of the estate of Melvin Pickard, and on behalf of all wrongful death

beneficiaries, appeals from a take-nothing judgment.[1] Pickard raises two appellate issues: (1) the trial court erred by granting partial summary judgment to appellee, Arthur R. Brown, M.D., in his individual capacity; and (2) the trial court erred by failing to include Brown in jury charge questions one through four.[2]  We affirm.

## I.    Factual and Procedural Background

On January 11, 2002, Melvin received a check-up at Liberty Medical Surgical Clinic (the "Clinic"), and he became a patient of Rebecca Daley, D.O.[3]  Daley diagnosed Melvin with diabetes mellitus, renal failure, and coronary artery disease.  On January 14, 2002, Melvin returned to the Clinic for a follow-up visit.  Daley determined that Melvin had elongated and enlarged toenails and scaling of his feet.  Additionally, Daley diagnosed Melvin with "atrial fibrillation, onychodystrophy, congestive heart failure, and dystrophic changes in the nails occurring as a congenital defect or due to any illness or injury that may cause a malformed nail."

On March 2, 2002, Melvin was admitted to Liberty-Dayton Hospital due to a urinary tract infection and pneumonia.  Steven Ellerbe, M.D., admitted Melvin to the hospital because Daley was on vacation at the time.  On March 8, 2002, Melvin was discharged from the hospital and transferred to Golden Charm Nursing Center ("Golden Charm").  Arthur R. Brown, M.D., was the medical director of Golden Charm, a partner with Daley in

---

[1] For the sake of clarity, we will refer to the Plaintiff/Appellant Jon Pickard as "Pickard" and to the deceased, Melvin Pickard, as Melvin.

[2] The Notice of Appeal, Appellant's Brief, and Appellee's Brief list as Appellees all Defendants from the court below; however, the issues raised by Pickard involve only Brown.  Thus, while the style of the case remains the same, we address the issues only as they relate to Brown.

[3] Doctor of Osteopathic Medicine; *see* http://www.osteopathic.org/index.cfm?PageID=ado_whatis (last visited January 6, 2009).

2

the Clinic, and a supervisor of Karen Collins, P.A., a physician's assistant.

Collins saw Melvin at least once a month while he was resident at Golden Charm. Collins typically relied on Melvin's nurses to inform her about any wounds he may have had. While at Golden Charm, Melvin had a myriad of chronic problems, including weight loss, skin breakdown, and urinary tract infections.

On November 7, 2002, Melvin's family assumed Melvin's care, removing him from Golden Charm and seeking assistance from a home health agency. On November 13, 2002, Brandon Smith, P.A., another physician's assistant, visited Melvin at home. Smith consulted with Brown, and Brown recommended admitting Melvin to Triumph Hospital for wound care. On December 12, 2002, Melvin was transferred to East Houston Medical Center where, due to extensive development of ulcers on his heels, his right leg was amputated above the knee. Melvin developed pneumonia and passed away on December 26, 2002.

Pickard, the administrator of Melvin's estate, brought a medical malpractice suit against Brown, Ellerbe, Daley, Collins, the Clinic, and Golden Charm, among others. Brown filed a motion for summary judgment, asserting that he was not a cause of Melvin's death or injuries. The trial court granted partial summary judgment as to Brown, removing him from individual liability in the case, but leaving him exposed to "claims and causes of action for his vicarious liability based upon agency and/or the doctrine of *respondeat superior*." The case was then tried to a jury.

During the charge conference, the parties stipulated that Brown, Ellerbe and Collins were, at all material times, acting within the course and scope of their agency as agents of the Clinic. Regarding the charge itself, the trial court initially included Brown in questions

(1) through (4), the ordinary negligence and apportionment questions. Brown objected on the grounds that, after the partial summary judgment, he could not be liable individually. The trial court agreed and removed Brown from those questions in the court's charge. The jury found no negligence on the part of the named defendants. The trial court rendered judgment on the verdict. This appeal followed.

## II.    Was Brown's Motion for Summary Judgment Properly Granted?

In his first appellate issue, Pickard argues that the trial court erred in granting partial summary judgment for Brown. Pickard asserts that the motion for summary judgment filed by Brown was a traditional motion for summary judgment and that Brown failed to meet his burden under rule 166a. *See* TEX. R. CIV. P. 166a(c); *IHS Cedars Treatment Ctr. of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2003); *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). Brown counters that his motion was a "hybrid" motion for summary judgment that combined both a traditional and a no-evidence motion for summary judgment and that Pickard failed to meet his burden under rule 166a. *See* TEX. R. CIV. P. 166a(i); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). We agree with Brown.

## A.    Was Brown's motion for summary judgment traditional or "hybrid"?

In a traditional motion for summary judgment, the movant must demonstrate that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Mason*, 143 S.W.3d at 798. To do so, the movant either negates one or more of the essential elements of the non-movant's cause of action or conclusively establishes all elements of the movant's defense. *Grinnell*, 951 S.W.2d at 425. In a no-evidence motion

for summary judgment, the movant alleges that there is no evidence to establish an essential element of the non-movant's claim. *Grant*, 73 S.W.3d at 215.

The movant may file both motions in the same document and attach evidence supporting his traditional motion for summary judgment without converting the entire motion into a traditional motion for summary judgment. *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004). "If a motion clearly sets forth its grounds and otherwise meets rule 166a's requirements, it is sufficient to raise both traditional and no-evidence grounds for summary judgment, even if the motion does not clearly delineate or segregate those grounds." *Sipes v. City of Grapevine*, 146 S.W.3d 273, 278 (Tex. App.–Fort Worth 2004), *rev'd in part on other grounds,* 195 S.W.3d 689 (Tex. 2006); *see Binur*, 135 S.W.3d at 651.

In the present case, Brown filed a "hybrid" motion for summary judgment attacking the causation element of Pickard's medical malpractice claim. *See generally Williams v. Huber*, 964 S.W.2d 84, 86 (Tex. App.–Houston [14th Dist.] 1997, no writ) (setting forth the elements of a medical malpractice claim). From the outset of his motion, Brown asserted his entitlement to judgment as a matter of law, claiming he did not cause Melvin's death. Neither party contests whether Brown's motion included a traditional motion for summary judgment.

Additionally, Brown set forth the standard for no-evidence summary judgments, properly referencing rule 166a(i). *See* TEX. R. CIV. P. 166a(i). Brown claimed he was entitled to summary judgment because he was not involved in the treatment of Melvin and did not cause Melvin's injuries or death. Brown set out the elements of a medical malpractice claim and noted that expert testimony is, almost without exception, required

5

to prevail on summary judgment in medical malpractice cases. *Williams*, 964 S.W.2d at 84; *Chopra v. Hawryluk*, 892 S.W.2d 229, 231 (Tex. App.–El Paso 1995, writ denied) (citing *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex. 1966)). Brown then identified the causation element by stating in both his original motion and in his supplement to the motion that he "did not cause Mr. Pickard's injuries or death." Brown also noted that there was no proof in the medical records demonstrating that he was a cause of Melvin's death or injuries.

The Texas Supreme Court has noted its preference for using headings, if not separate motions, to differentiate between the two types of summary judgment motions. *See Binur*, 135 S.W.3d at 651 (noting that many courts have declared that traditional and no evidence motions should be filed separately). We agree with the supreme court that such a simple solution would very nearly eradicate issues such as the present one. Merely organizing the motions under appropriate headings should not substantially burden trial counsel. That being said, as the court noted, the rule does not require such simple precision. *Id.* We find that Brown filed both a traditional and no-evidence motion for summary judgment.

## B. Was Brown's motion for summary judgment properly granted?

Having determined that Brown filed both kinds of motions for summary judgment, we turn to Pickard's argument that the motion was improperly granted because he raised a genuine issue of material fact.

### 1. Standards of Review

Because a no-evidence summary judgment is essentially a pretrial directed verdict,

we apply the legal sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). Therefore, we consider the evidence "in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006).

We review the trial court's granting of a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When we review a traditional motion for summary judgment, "we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* We treat all evidence favorable to the nonmovant as true. *Id.*

In the present case, the trial court did not identify the grounds upon which it granted Brown's partial summary judgment. When such a situation arises, we will uphold the trial court's order if any of the grounds presented to the trial court are meritorious, so long as they have been preserved for our review. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 217 (Tex. 2003). Additionally, when the grounds are not identified, and there are multiple grounds upon which summary judgment could be granted, the nonmovant must negate all grounds on appeal*. Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993).

We first review the granting of summary judgment based on the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)*; see* Tex. R. Civ. P. 166a(i). Under rule 166a(i), the movant must allege that there is no evidence of a

7

material element of the adverse party's claim.  TEX. R. CIV. P. 166a(i); *Grant*, 73 S.W.3d at 215.  While not required to marshal its proof, the nonmovant must produce summary judgment evidence that raises a genuine issue of material fact.  *Ridgway*, 135 S.W.3d at 600; *Grant*, 73 S.W.3d at 215.

A genuine issue of material fact exists when there is more than a scintilla of evidence produced to support the existence of the challenged element.  *Ridgway*, 135 S.W.3d at 600.  More than a scintilla of evidence is that amount of evidence that would allow reasonable and fair-minded people to disagree in their conclusions.  *Id.* at 601.  If the evidence only creates a surmise or a suspicion of the fact, then the evidence is less than a scintilla.  *Id.*  If Pickard, the non movant, produces more than a scintilla of evidence, then we consider whether he has met the burden imposed by rule 166a(c).  *Id.* at 600; TEX. R. CIV. P. 166a(c).

In a traditional motion for summary judgment, the movant must demonstrate that he is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *see City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex. 1979) ("The movant . . . must establish his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law.").  Once the movant has negated an element of the nonmovant's claim, thereby establishing his right to summary judgment, the burden shifts to the nonmovant to produce evidence sufficient to raise an issue of fact regarding each challenged element.  *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).  We will uphold a traditional summary judgment when the movant has met his burden and the summary

8

judgment record demonstrates the absence of a genuine issue of material fact. *See* Tᴇx. R. Cɪᴠ. P. 166a(c); *Clear Creek Basin*, 589 S.W.2d at 678.

The plaintiff, in order to prevail on a medical malpractice claim, must establish four elements: "(1) a duty requiring the defendant to conform to a certain standard of conduct; (2) the applicable standard of care and its breach; (3) resulting injury; and (4) a reasonably close causal connection between the alleged breach of the standard of care and the alleged injury." *Williams*, 964 S.W.2d at 86. Expert testimony is almost always necessary to either prevent or prevail on summary judgment in a medical malpractice case. *Id.*; *Chopra*, 892 S.W.2d at 231 ("In determining negligence in a case such as this, which concerns the highly specialized art of treating disease, the court and jury must be dependent on expert testimony.")).

### 2. Discussion

In response to Brown's motion, Pickard attached medical records and expert testimony addressing the proper standards of care and the causes of Melvin's death. The medical records do not indicate, in any way, that Brown's conduct was a proximate cause of Melvin's death. The records reflect that Brown ordered, among other things, (1) a blood test, (2) a CT scan, and (3) a transfer to a nursing home for Melvin.

The expert's report similarly lacked any evidence that Brown proximately caused Melvin's injuries or death. The expert described four instances of breaches of the standards of care that were, in his opinion, proximate causes of Melvin's death or injuries. First, the expert noted that the "accepted standard of nursing home care" is for every nursing home resident to have completed and documented in his chart a complete and

9

thorough "History and Physical examination." Additionally, according to the expert, the standard of care requires the "attending physician" to "document a legible monthly progress note, which should adequately address ongoing medical concerns and the planned course of intervention." Regarding this first alleged breach, the expert concluded, "The breach of [the accepted standard of nursing home care] appears to have occurred in [Melvin] because there is no adequate documentation that Dr. Ellerbe followed these national standards." The expert asserted this alleged breach, with the development of the right heel ulcer which ultimately led to amputation complicated by sepsis, was the proximate cause of Melvin's death.

Second, the expert stated that the breach of the "accepted medical standard of care for a patient at risk for reoccurring urinary tract infections" "more likely than not contributed to [Melvin's] final episode of sepsis associated with [Melvin's] post-amputation decline, the proximate cause of his death." The expert noted that this breach was committed by the staff at the Golden Charm but did not identify any staff or medical personnel by name.

Third, the expert asserted that the "accepted nursing home standard of care" required the Golden Charm's staff to "ensure the safety and well being of each individual nursing home resident and to help them maintain optimal independence and health . . . includ[ing] discharging a patient to a safe environment with the ongoing uninterrupted required medical care." According to the expert, the Golden Charm staff "failed to provide an adequate comprehensive discharge plan of care" that was "more likely than not . . . the precipitating factor in the subsequent decline of Mr. Pickard's right heel ulcer," the decline of which "contributed the proximate cause of [Melvin's] death."

Fourth, the expert alleged that Collins's acts or omissions violated the "accepted

10

standard of nursing home care." The expert noted:

> The failure of the physician assistant's conduct to adequately evaluate, assess and initiate treatment for Mr. Pickard's ongoing wound care and nutritional needs caused Mr. Pickard to develop a right heel ulcer as well as a malnourished state which would eventually require amputation including the complications of sepsis, was the proximate cause leading to premature death.

Nowhere in the report did the expert assert that Brown, in his individual capacity or otherwise, breached any applicable standard of care, nor did the expert give any indication that any of Brown's acts or omissions were a proximate cause of Melvin's injuries and death. As such, the expert's report gives rise to no more than a suspicion or surmise regarding Brown's connection, if any, to Melvin's death and injuries. *See generally Ridgway*, 135 S.W.3d at 601 (noting that a genuine issue of material fact requires the presentation of evidence that "trascend[s] mere suspicion"). We find that Pickard failed to produce more than a mere scintilla of evidence demonstrating that Brown's acts or omissions were a proximate cause of Melvin's injuries or death, and the trial court properly granted summary judgment to Brown in his individual capacity.

### III.    Was Brown Properly Excluded from the Jury Charge?

Pickard, in his second appellate issue, asserts that the trial court erred in excluding Brown from questions (1) through (4) in the jury charge.[4] The trial court excluded Brown because, due to the partial summary judgment, Brown's liability could only be based on vicarious liability and the doctrine of *respondeat superior*. Pickard contends that Brown's personal negligence was tried by consent. Collins and Ellerbe were the only two parties

---

[4] Questions (1) and (2) were ordinary negligence questions regarding Melvin's injuries and death, respectively. Questions (3) and (4) were the apportionment questions.

11

included in questions (1) through (4). The jury determined that neither person was negligent, and it properly did not answer the apportionment questions. We agree with the trial court's decision to exclude Brown from the ordinary negligence and apportionment questions.

### A. Standard of Review

We apply an abuse of discretion standard when reviewing the submission of jury questions. TEX. R. CIV. P. 277; *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990). If the trial court acts (1) without reference to any guiding rules or principles, (2) arbitrarily, or (3) unreasonably, the court has abused its discretion. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997). For this Court to reverse the trial court's decision based on charge error, the error must have been harmful; that is, it must have "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1; *see Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 580 (Tex. App.–Austin 2007, no pet.).

### B. Applicable Law

An issue may be "tried by consent when evidence on the issue is developed under circumstances indicating that both parties understood the issue was in the case, and the other party fails to make an appropriate complaint." *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 719 (Tex. App.–Dallas 2004, no pet.). "Trial by consent applies in the exceptional case where it clearly appears from the record as a whole that the parties tried an unpled issue." *Reed v. Wright*, 155 S.W.3d 666, 670 (Tex. App.–Texarkana 2005, pet. denied). "'Certainly issues are not tried merely by the hearing of testimony thereon.'"

*Sage Street Assocs. v. Northdale Const. Co.*, 863 S.W.2d 438, 446 (Tex. 1993).

*Respondeat superior*—the theory of Brown's potential liability remaining after the partial summary judgment—is based on vicarious liability:  the doctrine that one party, though not negligent itself, is responsible for the negligence of another party based on the relationship between the parties.  *Vecellio Ins. Agency, Inc. v. Vanguard Underwriters*, 127 S.W.3d 134, 138 (Tex. App.–Houston [1st Dist.] 2003, no pet.); *St. Anthony's Hosp. v. Whitfield*, 946 S.W.2d 174, 178 (Tex. App.–Amarillo 1997, writ denied).  "To impose liability on an employer for the tort of his employee under the doctrine of *respondeat superior*, the employee's act must fall within the scope of the employee's general authority and must be in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired."  *Wilson v. H.E. Butt Grocery Co.*, 758 S.W.2d 904, 906 (Tex. App.–Corpus Christi 1988, no writ) (citing *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 357 (Tex. 1971)).  The doctrine of *respondeat superior* requires the plaintiff to prove that the employee was negligent and that the employee's negligence was the proximate cause of the plaintiff's injuries*.  DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex. 1995); *Marange v. Marshall*, 402 S.W.2d 236, 239 (Tex. Civ. App.–Corpus Christi 1966, writ ref'd n.r.e.).  Without such proof—that the employee committed the tort while acting in the scope of his employment—the employer has no liability.  *See Bedford v. Moore*, 166 S.W.3d 454, 460 (Tex. App.–Fort Worth 2005, no pet.); *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 656 (Tex. App.–Dallas 2002, pet. denied).

**C.    Discussion**

We disagree with Pickard that Brown's personal liability was tried by consent.

13

Pickard does not direct us to any authority supporting this argument. *See* TEX. R. APP. P. 38.1. Also, it is not clear from the record that the parties "understood the issue was in the case" because Brown's personal liability had already been removed from the case by the entry of the partial summary judgment. *See Johnson*, 148 S.W.3d at 719; *Jay Fikes & Assocs. v. Walton*, 578 S.W.2d 885, 889 (Tex. Civ. App.–Amarillo 1979, writ ref'd n.r.e.) (holding that trial by consent "is not intended to establish a general rule of practice and should be applied with care, and in no event in a doubtful situation."). Brown's personal liability was not tried by consent.

We also believe that the trial court properly excluded Brown from the ordinary negligence and apportionment questions because, after the partial summary judgment, Brown could only be found vicariously liable as an employer or principal, if liable at all. The trial court will not ask the jury an immaterial question such as whether a potential vicariously liable party is a direct cause of the injury. *See Bedford v. Moore*, 166 S.W.3d 454, 460 (Tex. App.–Fort Worth 2005, no pet.); *see generally* William D. Underwood & Michael D. Morrison, *Apportioning Responsibility in Cases Involving Claims of Vicarious, Derivative, or Statutory Harm Directly Caused by the Conduct of Another*, 55 BAYLOR L. REV. 617, 635-36 (2003) (noting that, in vicarious liability cases, courts do not ask whether any of the employer's conduct caused the injury in question "because all that matters is whether the requisite relationship exists between the [employee] and the employer"). This is so because even if the principal/employer was free from negligence, it may still be responsible for the negligence of his agent/employee. *Bedford*, 166 S.W.3d at 460. All that matters is whether the requisite relationship exists between the principal/agent or

14

employer/employee.  *See Wilson*, 758 S.W.2d at 906.  For the same reasons, the principal/employer should not be included in the apportionment question, and nothing in section 33.003 so requires.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.003 (Vernon 2008); *Rosell*, 89 S.W.3d at 656 ("[I]t would not be proper for an employer to be submitted along with the driver if its only responsibility was that of respondeat superior.").  We hold that the trial court properly excluded Brown from questions (1) through (4) of the jury charge.

## IV.    Conclusion

Having overruled all of Pickard's appellate issues, we affirm the decision of the trial court.

_____
GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and
filed this the 22nd day of January, 2009.